IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOEL WILLIAM GOODWIN,** : <br> **Plaintiff** : <br> : <br> v. : <br> : <br> **CAPTAIN HALL,** *et al.*, : <br> **Defendants** : | No. 1:20-cv-606 <br><br> (Judge Rambo) |

## MEMORANDUM

On April 13, 2020, *pro se* Plaintiff Joel William Goodwin ("Goodwin"), who was formerly incarcerated at the Allenwood United States Penitentiary ("USP-Allenwood"), initiated the above-captioned case by filing a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against various defendants employed by USP-Allenwood and the United States Bureau of Prisons ("BOP"). (Doc. No. 1.) On June 19, 2020, the court dismissed the complaint without prejudice because it was illegible and granted Goodwin leave to file an amended complaint. (Doc. No. 10.) Goodwin timely filed an amended complaint on July 15, 2020. (Doc. No. 11.)

Defendants Bennett-Meehan, Hall, Moore, Kimble, Powell, Jones, and Schreck ("Moving Defendants") moved to dismiss the complaint, or, alternatively, for summary judgment on September 7, 2021. (Doc. No. 39.) Defendants Lin, "Associate Warden," and "Unknown SIS Officer" have not been served with process and accordingly have not responded to the complaint. Moving Defendants

argue, *inter alia*, that Plaintiff failed to exhaust administrative remedies prior to filing suit. (Doc. No. 41.) In an order entered February 6, 2022, the court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. No. 33.) The court directed Goodwin to file a response to the motion for summary judgment that addressed the issue of exhaustion. (*Id.*) Goodwin has not responded to the Moving Defendants' motion or the court's order, and the motion is now ripe for the court's disposition. For the reasons that follow, the motion will be granted, and the court will additionally *sua sponte* grant summary judgment to the non-moving Defendants.

## I.   BACKGROUND

Goodwin's amended complaint alleges several incidents that occurred during his incarceration at USP-Allenwood. On January 2, 2020, Defendant Jones allegedly interfered with mail that Goodwin was attempting to send to the President. (Doc. No. 11 at 1.) Defendant Powell allegedly assisted Jones in this interference and repeatedly and sarcastically asked Goodwin whether he was going to send mail to the President whenever Goodwin requested records. (*Id.* at 2.)

On January 8, 2020, Defendant Hall allegedly told Goodwin that he needed to go to the prison yard. (*Id.* at 1). Goodwin allegedly had to "walk Muslim

2

instead [of] Catholic" for "protection from white inmates" despite the fact that he "was Catholic on previous 2 yards." (*Id.*)

On some unspecified date in March 2020, the amended complaint alleges that Defendant Moore screamed at Goodwin in front of other inmates. (*Id.*) The amended complaint further alleges that Goodwin requested a transfer to a prison closer to his home pursuant to the First Step Act but was denied such relief by BOP officials. (*Id.* at 2.) Goodwin also allegedly requested a "CPAP,"[1] but Defendant Bennett-Meehan allegedly denied this request because she "want[ed] another sleep study." (*Id.*)

Defendant Jones allegedly tried to give Goodwin razors on March 27, 2020, March 28, 2020, and March 29, 2020, despite the fact that Goodwin was allegedly on razor restriction at the time. (*Id.* at 3.) He also allegedly took Goodwin's tuna off his food tray on the first two of these days and never gave the tuna back to Goodwin. (*Id.*) The amended complaint further alleges that Defendant Shrake kicked and banged on Goodwin's cell all night on some unspecified date and "threw slice[d] cheese" under the door of the cell all night. (*Id.*) Shrake also allegedly told Goodwin to "go ahead and hang [him]self" and that prison staff would not run in to stop him and asked Goodwin if he wanted razors. (*Id.*)

---

[1] The amended complaint does not define this term.

3

The amended complaint alleges that an unnamed officer "repeatedly slammed" a gate right outside of Goodwin's cell on March 29, 2020. (*Id.*)  Prison staff allegedly refused to give Goodwin soap and supplies. (*Id.*)  An unnamed member of the prison staff also allegedly told Goodwin that he did not believe that "white boys pulled a knife on [Goodwin]" and refused to investigate such an incident because it would be a "waste of time." (*Id.*)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

4

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried." If the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.   STATEMENT OF MATERIAL FACTS[2]

Goodwin was committed to BOP custody on March 21, 2011 and was incarcerated in USP-Allenwood from October 15, 2019 to February 1, 2021. (Doc. No. 40 ¶ 1.) He initiated this lawsuit while he was incarcerated in USP-Allenwood. (*Id.* ¶ 2.) The BOP keeps a log of all administrative remedy submissions by inmates through an automated system known as SENTRY. (*Id.* ¶ 3.) SENTRY records reflect that Goodwin filed four administrative remedy requests between his entry into USP-Allenwood on October 15, 2019 and the date he filed the complaint that initiated this case. (*Id.* ¶ 8.) Three of those requests were rejected by the BOP's regional director and were not appealed by Goodwin. (*Id.* ¶¶ 9-17.) Goodwin appealed the fourth request through all stages of

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." *See* M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements. *See id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.*  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 49.)  Goodwin has not filed a responsive statement to Defendants' Rule 56.1 statement of facts.  Accordingly, unless otherwise noted, the court deems the facts set forth by Defendants to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts"). Furthermore, because the court ultimately concludes that Goodwin failed to exhaust administrative remedies prior to filing suit, the court's statement of material facts will only address facts pertaining to the issue of exhaustion.

administrative review, but the request was an appeal from a disciplinary hearing decision and did not pertain to the facts of this case. (*Id.* ¶¶ 18-23.) Goodwin never submitted any administrative remedy requests regarding the facts that give rise to the instant case. (*Id.* ¶ 24.)

## IV.   DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d

Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *Id.* Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to

9

exhaust will be excused only "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

In certain circumstances, administrative remedies may be considered unavailable to an inmate such that a failure to exhaust may be excused. *Ross v. Blake*, 578 U.S. 632 (2016). The *Ross* Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id.* at 644. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). To defeat a failure to exhaust defense based on misrepresentations by prison staff, an inmate must show "(1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation." *Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

The BOP has established a multi-tier system of administrative review that must be exhausted prior to an inmate filing suit in federal court. Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint via an informal resolution attempt form, known as a BP-8. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then present the issue to the warden via a request for administrative remedy, referred to as a BP-9. *Id.* § 542.14. The deadline to complete the BP-8 and the BP-9 is twenty days from the event giving rise to the inmate's complaint. *Id.* Generally, the warden must file a response to the BP-9 within twenty calendar days. *Id.* § 542.18. The inmate may file a BP-10, a regional administrative remedy appeal, to the appropriate regional director within twenty days of the warden's response if dissatisfied with the warden's response. *Id.* § 542.15(a). If the regional director's response is not satisfactory, the inmate may file a central office administrative remedy appeal, referred to as a BP-11, within thirty days of the regional director's response. *Id.* § 542.15(a). An inmate's appeal to the central office is the final administrative level of appeal in the BOP. *Id.* § 542.14(b).

In this case, the record reflects that Goodwin failed to exhaust administrative remedies. Goodwin never submitted any administrative remedy requests pertaining to the subject matter of this case, and the only administrative remedy request that he appealed through all stages of administrative review during

his incarceration at USP-Allenwood pertained to a disciplinary ruling that is not at issue in this case. (*See* Doc. No. 40 ¶¶ 8-24.) Plaintiff has also not advanced any arguments that the administrative remedy system was unavailable to him or that the court should otherwise excuse his failure to exhaust. Accordingly, the court concludes that Moving Defendants are entitled to summary judgment based on Goodwin's failure to exhaust. Having reached this conclusion, the court will not address Defendants' other summary judgment arguments.

The court will also *sua sponte* grant summary judgment in favor of non-moving Defendants Lin, Associate Warden, and Unknown SIS Officer for Plaintiff's failure to exhaust administrative remedies. Although a court must ordinarily give notice that it intends to grant summary judgment in favor of a non-moving party, the court may *sua sponte* grant summary judgment without advance notice when there is a fully developed record, the party against whom summary judgment is sought would not be prejudiced by the ruling, and the ruling is on a purely legal issue. *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004). That is exactly the case here: the record is fully developed on the issue of exhaustion, Goodwin is not prejudiced by the court raising the issue *sua sponte* since the same result would inevitably follow if the court gave advance notice, and the ruling is a purely legal question given that there are no issues of material fact as to whether Goodwin exhausted administrative

remedies. Accordingly summary judgment will also be granted in favor of Defendants Lin, Associate Warden, and Unknown SIS Officer.

## V. CONCLUSION

For the foregoing reasons, Moving Defendants' motion for summary judgment (Doc. No. 39) will be granted and the court will *sua sponte* grant summary judgment in favor of non-moving Defendants Lin, Associate Warden, and Unknown SIS Officer. An appropriate order follows.

S/Sylvia H. Rambo
United States District Judge

Dated: July 21, 2022